NOT RECOMMENDED FOR PUBLICATION
File Name: 26a0335n.06

Case No. 26-5006

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Jul 27, 2026
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| BIZZACK CONSTRUCTION, LLC, | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| TRC ENGINEERS, INC., | ) | KENTUCKY |
| Defendant-Appellee. | ) | |
| | ) | OPINION |

Before: DAVIS, MATHIS, and RITZ, Circuit Judges.

**MATHIS, Circuit Judge.** West Virginia awarded Bizzack Construction, LLC a contract to build highway infrastructure, which included the construction of several bridges. One bridge failed. Bizzack sued two of its subcontractors, AECOM Technical Services, Inc. and TRC Engineers, Inc., for design- and inspection-related failures. Bizzack settled with AECOM. The district court later granted summary judgment to TRC, concluding that Bizzack waived its claims against TRC in its settlement agreement with AECOM. We vacate the district court's judgment and remand for further proceedings.

**I.**

**A.**

This dispute arises from a bridge-construction project in West Virginia. In 2015, the West Virginia Department of Highways (WVDOH) awarded a contract to Bizzack Construction, LLC

for the construction of a 14.6-mile stretch along U.S. Route 35 (the Project). The Project included the design and construction of four bridges. Only one bridge (Bridge 1) is relevant to this appeal.

Bizzack subcontracted with TRC Engineers, Inc. to assist with the Project. TRC is a national engineering firm. Under a consultant agreement, TRC agreed that it would work as the "lead designer" for the Project, using several subcontractors to that end. R. 152-1, PageID 3515. And it agreed to provide construction management and inspection services, such as "oversee[ing] embankment construction . . . and the [use of] proper materials," so that Bizzack could construct the bridge "pursuant to the [appropriate] plans and specifications." R. 152-20, PageID 4286; R. 152-21, PageID 4301.

TRC subcontracted with AECOM Technical Services, Inc. to design Bridge 1, which would traverse another state highway in West Virginia. AECOM's design for the structure included four sets of piers for support, with the northernmost set referred to as Pier 4. Pier 4 would be built within a 120-foot sloping embankment composed of several layers of compacted materials known as "lifts," which were crucial to ensure pier stability. TRC approved AECOM's design of the bridge and submitted it to the WVDOH for final approval. The WVDOH approved AECOM's design, allowing construction to proceed.

Bizzack hired Haydon Bridge Company, Inc. to build Bridge 1. By November 2017, Haydon had completed construction on all four piers. And by the end of December, Bizzack had also completed the embankment for Pier 4.[1] The only thing left to do was place the bridge's horizontal beams. But a major issue arose.

---

[1] Per Bizzack's contract with TRC, TRC remained onsite throughout this process for quality inspection services.

While reviewing the piers to place the beams, Haydon noticed a considerable deformity with Pier 4's bearing pads.[2] And it appeared Pier 4 had moved multiple inches in two directions since the completion of its construction. Haydon notified Bizzack and TRC, and construction halted. At this point, the parties agreed they needed to survey the location and establish a monitoring plan for the site. Subsequent measurements confirmed that Pier 4 was moving within the embankment.

The parties notified the WVDOH of the issues because a delay of the Project appeared inevitable. During a meeting in 2018, the WVDOH raised concerns about the embankment's design analysis and material composition. The record shows that AECOM's design overlooked the embankment's full "lateral loading" on the pier and its underground support. R. 152-9, PageID 3823. AECOM notified Bizzack afterward that the only way to review the structural integrity of Pier 4 was to first look at its piling foundation,[3] which required demolishing it altogether. So the embankment needed to be removed and replaced.

AECOM sought to correct its errors. Although it initially believed the embankment could be replaced by using previous embankment materials, AECOM ultimately recommended using different materials to create the new embankment. AECOM also changed course by recommending that the "design of [P]ier 4 . . . have [some] camber built into it."[4] *Id.* at 3830.

---

[2] A bearing pad is a large block of reinforced rubber that the bridge's concrete beams sit on. These pads sit between the top of the pier cap and concrete beams.

[3] A piling foundation is comprised "of a number of heavy wooden or metal posts or beams, pointed or sharpened at the lower end and driven vertically into a river-bed, the sea, or marshy ground to support the foundations of a superstructure such as a house, a bridge, a pier, etc." *Pile*, *Oxford English Dictionary*, https://www.oed.com/dictionary/pile_n1?tab=meaning_and_use#30160126 (last visited June 2, 2026).

[4] Camber is defined as "a slight convexity, arching, or curvature (as of a beam, deck, or road)." *Camber*, *Merriam-Webster Dictionary*, https://www.merriam-webster.com/dictionary/camber (last visited June 2, 2026).

These new designs would come at great cost, but the parties agreed to submit the proposal to the WVDOH. The WVDOH approved the submission, and construction of the bridge recommenced.

**B.**

Bizzack sued TRC and AECOM for negligence and breach of contract arising from the allegedly improper design and construction of Bridge 1's Pier 4. After an extended period of discovery, Bizzack sought partial summary judgment on its claims against AECOM and TRC. While its motions for summary judgment were pending, Bizzack and AECOM settled. So the district court dismissed AECOM from the suit.

TRC moved for summary judgment against Bizzack. It argued that: (1) TRC did not owe a contractual duty to Bizzack to supervise AECOM's design, (2) Bizzack did not offer any expert evidence supporting a breach of duty, and (3) Bizzack's complaint asserted causes of action arising only from AECOM's flawed design analysis, which Bizzack had waived in its settlement agreement with AECOM. The district court agreed with TRC that Bizzack waived its claims against TRC in the settlement agreement. The court thus granted TRC's motion for summary judgment and denied Bizzack's motion for partial summary judgment as moot.[5]

This appeal followed.

**II.**

We review the grant of summary judgment de novo. *Puskas v. Delaware County*, 56 F.4th 1088, 1093 (6th Cir. 2023). Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

---

[5] TRC had also filed another motion for partial summary judgment related to damages, but the district court denied that motion as moot once it decided the issue of liability.

law." Fed. R. Civ. P. 56(a). We review the evidence and draw all reasonable inferences in the nonmoving party's favor. *Hieber v. Oakland County*, 136 F.4th 308, 320 (6th Cir. 2025).

### III.

Bizzack challenges the district court's grant of summary judgment to TRC on its negligence and breach-of-contract claims. But before reaching the merits of those claims, we must answer two threshold questions. First, did Bizzack waive those claims in its settlement agreement with AECOM? If not, what claims remained at the summary-judgment stage?

### A.

We start with Bizzack's settlement with AECOM. In the settlement agreement, Bizzack released its claims against AECOM related to the design services that AECOM provided for Bridge 1. Bizzack released its claims against "TRC for damages allegedly caused by AECOM's acts or omissions, based upon TRC's Subconsultant Agreement with AECOM to provide design services." R. 172, Page ID 6117. The agreement refers to those claims as "Pass-Through Claims." *Id.* But the agreement made clear that Bizzack did not "release or extinguish any claims that [it] may have against TRC arising from the acts or omissions of TRC." *Id.* West Virginia law governs the settlement agreement.

West Virginia courts construe settlement agreements like any other contract. *Levine v. Rockwool Int'l A/S*, 888 S.E.2d 903, 907 (W. Va. 2023). "Courts are to ascertain the meaning of the agreement as manifested by its language and enforce it as written." *Hull Prop. Grp., LLC v. Quarrier St LLC*, 915 S.E.2d 11, 18 (W. Va. Ct. App. 2025). Thus, "[a] valid written instrument which expresses the intent of the parties in plain and unambiguous language is not subject to judicial construction or interpretation but will be applied and enforced according to such intent." *VanKirk v. Green Constr. Co.*, 466 S.E.2d 782, 789 (W. Va. 1995) (quotation omitted).

West Virginia "favors and encourages" parties to settle their disputes. *Levine*, 888 S.E.2d at 907 (quotation omitted). To that end, "it is the policy of the law to uphold and enforce such contracts if they are fairly made and are not in contravention of some law or public policy." *Id.* (quotation omitted). A settlement agreement "ordinarily covers only such matters as may fairly be said to have been within the contemplation of the parties at the time of its execution." *Multiplex, Inc. v. Raleigh Cnty. Bd. of Educ.*, 709 S.E.2d 561, 564 (W. Va. 2011) (per curiam) (quotation omitted). And "when parties sign an agreement releasing one defendant with the clearly expressed expectation that they will be able to proceed against others, that expectation should be given effect by the courts." *Woodrum v. Johnson*, 559 S.E.2d 908, 918 (W. Va. 2001) (quotation omitted).

Bizzack did not waive all its claims against TRC in the settlement agreement with AECOM. Instead, Bizzack waived only those claims against TRC for which TRC was "vicariously responsible" for AECOM's defective design of Bridge 1. *Cf. id.* The settlement agreement expressly carved out any claims that Bizzack would have against TRC for *TRC*'s actions. This makes sense because TRC is not a party to the settlement agreement.

**B.**

That leads to our second inquiry—figuring out what, if any, claims Bizzack maintained against TRC at the summary-judgment stage. The district court looked to Bizzack's complaint to answer this question. But it erred by doing so.

District courts should not limit themselves "to the allegations contained in a plaintiff's complaint" when considering a summary-judgment motion. *Doe v. Univ. of Ky.*, 111 F.4th 705, 715 (6th Cir. 2024). At the pleading stage, a plaintiff need provide only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint's factual allegations "must put a defendant on notice of the claims the plaintiff is likely

to bring." *Univ. of Ky.*, 111 F.4th at 715. Because summary-judgment motions typically follow discovery, the summary-judgment standard "expressly contemplates that the non-moving party may put forward evidence not contained in the pleadings in order to rebut a summary judgment motion." *Id.* (citation modified).

We expect a plaintiff to clarify its claims by the time of summary judgment. *See Harris v. Bornhorst*, 513 F.3d 503, 516 (6th Cir. 2008). By that time, the parties have had the opportunity to gather evidence and connect it to the asserted claims. Accordingly, we have recognized that "a claim raised in response to a summary judgment motion [may] provide[] sufficient notice to the opposing party." *Carter v. Ford Motor Co.*, 561 F.3d 562, 568 (6th Cir. 2009). We commonly refer to this as the "course of the proceedings" test. *Harris*, 513 F.3d at 516 (quotation omitted). Courts determine whether a plaintiff has provided sufficient notice of its claims "on a case-by-case basis." *Carter*, 561 F.3d at 568. The throughline of our cases has been that the plaintiff's claims at summary judgment must lie "within the scope" of what it pleaded in the complaint. *Harris*, 513 F.3d at 517.

We look first to the complaint. For Bizzack's negligence claim against TRC, the complaint alleges that TRC owed "a duty to use ordinary skill, care and diligence in rendering its professional services in the engineering, design, and construction inspection support services related to the design and construction of the Project, including Bridge 1." R. 26, Page ID 305. The complaint alleges further that TRC breached its duty of care by "fail[ing] to properly engineer, design and inspect Bridge 1," causing losses to Bizzack. *Id.* For Bizzack's breach-of-contract claim, the complaint alleges that TRC breached its agreement with Bizzack to "perform engineering, design and construction support inspection services" by "fail[ing] to properly engineer, design and inspect Bridge 1," causing damages to Bizzack. *Id.* at 307. The complaint should have put TRC on notice

that Bizzack pursued claims for TRC's construction support inspection services along with TRC's design and engineering services. *See Univ. of Ky.*, 111 F.4th at 715.

The agreement between Bizzack and TRC and TRC's fee proposal (both of which Bizzack attached to the complaint) evince that TRC's design and engineering responsibilities differed from its support and inspection responsibilities. The agreement identifies TRC as the "lead designer." R. 152-1, PageID 3515. And it specifies that AECOM will provide design and engineering services for Bridge 1. TRC agreed further to "provide construction management and inspection" for the Project. *Id.* at 3527. This service required TRC to provide a quality control manager to "manage construction quality control, materials testing, and construction inspection." *Id.* at 3527–28. In the run-up to the agreement, TRC proposed a fee schedule to Bizzack for the work it would do, segregating its design services from its construction-management work. So TRC understood that these duties did not overlap.

Discovery confirmed that TRC's design and engineering services were separate from its construction support inspection services. One of TRC's employees testified that TRC maintained responsibility for construction and inspection services. And when pressed, he specified that "AECOM [did not] perform any construction engineering inspection." R. 152-2, PageID 3556. AECOM, according to the employee, was responsible for the design and engineering associated with Bridge 1.

The complaint, the agreement between Bizzack and TRC, TRC's fee proposal, and discovery all indicate that Bizzack sought to hold TRC responsible for its design and engineering services as well as its construction support inspection services. AECOM provided only design and engineering services for Bridge 1. It did not provide construction support inspection services. TRC did.

In the settlement agreement with AECOM, Bizzack did not release its claims against TRC for construction support inspection services. That is because the settlement agreement did not extinguish claims that Bizzack had against TRC for TRC's acts or omissions. So Bizzack waived its claims against TRC based on the design and engineering services for Bridge 1. But Bizzack did not waive its negligence and breach-of-contract claims against TRC based on TRC's construction support inspection services. Nor did it "express[ly] disavow[]" these claims during the litigation or in the settlement agreement with AECOM. *See Carter*, 561 F.3d at 568.

TRC contends that Bizzack's issues with AECOM's faulty design and TRC's faulty quality inspection are identical. But as we have discussed, the record belies this argument. As one of TRC's own representatives testified, TRC retained construction-inspection duties, for which AECOM had no responsibility.

**IV.**

Having determined that Bizzack did not waive its negligence and breach-of-contract claims against TRC for TRC's allegedly deficient construction support inspection services, we must decide whether either party is entitled to summary judgment on these claims. We conclude that neither party has shown an entitlement to summary judgment at this stage.

**A.**

We turn to Bizzack's negligence claim. In a negligence case under West Virginia law, a plaintiff must prove three elements. First, a plaintiff must show that the defendant owed a duty of care to the plaintiff. *Camden-Clark Mem'l Hosp. Corp. v. Marietta Area Healthcare, Inc.*, 922 S.E.2d 324, 329 (W. Va. 2025). Second, a plaintiff must show that the defendant acted negligently, breaching that duty. *Id.* And third, the defendant's acts or omission must have "proximately caused some injury to the plaintiff that is compensable by damages." *Id.* (quotation

omitted). Whether the defendant owes the plaintiff a duty of care is a question of law for the court. *Jones v. Logan Cnty. Bd. of Educ.*, 881 S.E.2d 374, 384 (W. Va. 2022). But "questions of negligence, contributory negligence, proximate cause, intervening cause and concurrent negligence are questions of fact for the jury where the evidence is conflicting" or when reasonable people can draw different conclusions from the undisputed facts. *Boyce v. Monongahela Power Co.*, 894 S.E.2d 913, 921 (W. Va. 2023) (quotation omitted).

TRC owed a duty of care to Bizzack to provide construction support inspection services for Bridge 1. That duty arose from the agreement between Bizzack and TRC. *See Aikens v. Debow*, 541 S.E.2d 576, 589 (W. Va. 2000). In the agreement, TRC obligated itself to "manage construction quality control, materials testing, and construction inspection." R. 152-1, PageID 3528.

But open questions remain. Was TRC negligent in providing the construction support inspection services? If so, did TRC's negligence proximately cause damages to Bizzack? The parties do not dispute that AECOM's design caused damages to Bizzack. But the factfinder can still "consider the fault of all persons who contributed to the alleged damages" even though Bizzack reached a settlement with AECOM. *See* W. Va. Code Ann. § 55-7-13d(a)(1)–(2). The district court did not pass on these questions because it found that Bizzack waived its claims against TRC in the settlement agreement with AECOM.

The district court did not reach the merits of Bizzack's negligence claim arising from TRC's construction support inspection services. We thus vacate the grant of summary judgment to TRC and the denial of Bizzack's motion for partial summary judgment so that the district court can consider that claim in the first instance.

**B.**

We turn next to Bizzack's breach-of-contract claim arising from TRC's construction support inspection services. Under West Virginia law, "[a] claim for breach of contract requires proof of the formation of a contract, a breach of the terms of that contract, and resulting damages." *Sneberger v. Morrison*, 776 S.E.2d 156, 171 (W. Va. 2015).

Bizzack and TRC entered into a valid contract. In that contract, TRC agreed it would "do, perform, and carry out, in a satisfactory, professional, and timely manner the Scope of Services delineated in Attachment 'A.'" R. 152-1, PageID 3501. The attachment lists various services TRC would provide, including "Construction Management & Inspection." *Id.* at 3527. As part of that service, TRC stated that it would supply personnel to "manage construction quality control, materials testing, and construction inspection." *Id.* at 3528.

But like the negligence claim, open questions remain about Bizzack's breach-of-contract claim. Did TRC breach the provisions of the agreement related to construction management and inspection? And if so, did Bizzack sustain any damages from that breach?

Because "we are a court of review, not first view," the district court should tackle these questions in the first instance. *United States v. Houston*, 792 F.3d 663, 669 (6th Cir. 2015). We thus vacate the district court's summary-judgment decision as to the breach-of-contract claim.

**V.**

For the reasons above, we **VACATE** the district court's grant of summary judgment to TRC and the denial of partial summary judgment to Bizzack. We **REMAND** for further proceedings consistent with this opinion.